property, and reverse the decree of the district court.

Affirmed as to the ship; and reversed as to the cargo, upon another point appearing upon further proof ordered.   8 Cranch [12 U. S.] 388. See The St. Lawrence [Case No. 12,232].

## Case No. 9,185.

### The MARY.

[1 Mason, 365.] [1]

Circuit Court, D. Massachusetts. May Term, 1818.

##### Shipping—Privateer—Damages—Owner—Estoppel.

If a person has in the acts of court asserted himself as part owner of a privateer, he will be responsible as such owner for damages assessed against such privateer, although his name be not in the ship's papers.

This cause having been decided in favor of the privateer Cadet against the claim of the privateer Paul Jones the damages were assessed against the owners of the latter, under the decree of the supreme court, which is reported at large in 2 Wheat. [15 U. S.] 123.   At May term, 1817, of the circuit court, process issued against the owners, who were named in the commission and ship's papers, for the damages so assessed; but the process was returned unsatisfied. And at October term, 1817, the plaintiffs filed a petition praying for a monition against Messrs. Bryant and Sturgis as joint owners, to compel them to pay the damages.   It appeared of record in the proceedings, that at May term, 1816, Messrs. Bryant and Sturgis filed a petition in the circuit court, alleging that the Mary [Thomas, master] had been condemned in the district court, of Maine, "to them the petitioners and others, owners of the private armed vessel Paul Jones as captors;" that the same decree had been affirmed in the circuit court "adjudging the said vessel and cargo to the petitioners and others, said owners, as captors;" and praying a delivery of the proceeds to them, on bail pending the appeal to the supreme court.   This petition was resisted on the part of the owners and officers of the private armed vessel Cadet, and finally an agreement was entered into by the parties, at the same term, as follows: "In the case of the application of Messrs. Bryant and Sturgis, in behalf of themselves and others, owners of the private armed vessel Paul Jones, &c. praying that the proceeds of the prize vessel might be paid out to them, on giving bonds, &c.   It is agreed by the parties in interest, that one half of the said proceeds be paid out as prayed for and one half thereof be in like manner paid out to the adverse claimants, (the owners of the Cadet,) each giving therefor such security as the other shall approve, to be approved by the judges at chambers, or in court."   The proceeds were paid

out accordingly, and the proper approved security given, and Messrs. Bryant and Sturgis received one moiety thereof.

A monition was granted by the court against Messrs. Bryant and Sturgis, to appear and show cause, why the damages should not be paid by them.   At the return of the monition they accordingly appeared, and filed a special answer, and defensive allegation on oath.   It stated that at the time of the equipment and commissioning of the Paul Jones, she was armed by one Samuel Hubbard, who gave bonds at the custom house on the outfit for the cruise; that after the equipment of the Paul Jones, one Joshua Hilton representing himself a part owner, and being indebted to the respondents, proposed to give them one sixteenth part of the Paul Jones for five hundred dollars, in satisfaction of their demand, to which the respondents assented; that no written conveyance has been since made, and no money or settlement with Hilton upon that contract, although it was, and is, the expectation of the respondents to allow the said sum in account with Hilton on settlement; that the said Hubbard was constituted agent for the privateer, and that the proceeds have been paid into his hands, and are received by him for payment of the sums due in this case; and they, therefore, prayed that a monition might issue to the said Hubbard, and his sureties, on the custom-house bond, and to the other owners, to pay the amount before the respondents should be made liable; and they submitted to the court the question of their liability.

The court directed a monition against the sureties in the said bond.   And the question as to the liability of Bryant and Sturgis as owners, was several times spoken to by Mr. Sprague, for owners of the Cadet, and by L. Shaw, for respondents.

STORY, Circuit Justice.   Whatever might have been my opinion upon the special facts stated in the answer, as to which I affirm and deny nothing, I am very clear, that the proceedings of Messrs. Bryant and Sturgis, in the acts of court, in which they assert themselves to be owners, and claim a delivery of the prize proceeds on bail in that character, are conclusive upon them, and they cannot now be permitted to deny, that they are owners at least to the extent of being responsible for the damages in this case. This case is much stronger than that of The Nostra Signora de los Dolores, 1 Dod. 290, where Sir William Scott held a person liable, as owner, for damages, although his name was not in the ship's papers.   There the party had only asserted himself owner by acts in pais; here the respondents assert it by acts of record, and must be estopped by such acts.   The prize proceeds were delivered to them on bail, in virtue of their character as owners.   How can the court now consistently permit them to shake off the

character they have voluntarily assumed? There must then be a decree against them for payment of the damages; but we will do all we can to relieve them, by calling, with the consent of the plaintiffs, in the first instance, upon the original owner and his sureties, and suspend process to compel payment, until we see if that proceeding be effectual.

The money was afterwards paid by the sureties of the original owner.

## Case No. 9,186.

### The MARY.

[1 Paine, 180.] [1]

Circuit Court, S. D. New York. April Term, 1822.

SEAMEN'S WAGES—LIEN—WHEN ENFORCED—WAIVER—BONA FIDE PURCHASER.

1. No rule has ever been adopted by the maritime law, either of England or this country, prescribing the time within which mariners should proceed to enforce their lien for wages. Necessity of some rule.

[Cited in Cole v. The Atlantic, Case No. 2,976; Packard v. The Louisa, Id. 10,652; Pierce v. The Alberto, Id. 11,142; The Galloway C. Morris, Id. 5,204.]

2. The lien of mariners has no analogy to common law liens, as regards the possession of the subject.

[Cited in Edwards v. The Robert F. Stockton, Case No. 4,297.]

3. A forbearance by seamen to libel a vessel at a port where they are discharged, before the end of the voyage, does not amount to a waiver of their lien, as against a subsequent bona fide purchaser. Difference between a bottomry lien and a lien for wages as respects delay in enforcing it.

[Cited in Knox v. The Ninetta, Case No. 7,-912; The Bolivar, Id. 1,610; The Avon, Id. 680; Crosby v. The Lillie, 40 Fed. 368.]

[Distinguished in The Rover v. Stiles, 5 Blackf. 485.]

4. A vessel sailed with a cargo on a voyage from New-York to New-Orleans and back. She remained at New-Orleans more than a year after her arrival, waiting for freight. Not obtaining any, the master discharged the seamen, whom he persuaded to return with him in another vessel to New-York, to get their wages. Afterwards, while the vessel was at New-Orleans, she was sold, and went a voyage to Liverpool, and thence to New-York. *Held,* that the seamen could libel her on her arrival at New-York, and that they were entitled to their full wages to the time of their return to that city.

[Cited in The Utility, Case No. 16,806; Thompson v. The Oakland, Id. 13,971; Knox v. The Ninetta, Id. 7,912; Edwards v. The Robert F. Stockton, Id. 4,297; Packard v. The Louisa, Id. 10,652; The D. M. French, Id. 3,938; The Galloway C. Morris, Id. 5,204; Southard v. Brady, 36 Fed. 561.]

[Distinguished in The Rover v. Stiles, 5 Blackf. 485.]

This was an appeal from a decree of the district court for the Southern district of New-York, sustaining a libel for seamen's wages.

The respondents shipped on board the Mary, as mariners, in June, 1818, on a voyage from New-York to New-Orleans and

back to New-York, or such other port as the ship might take freight for. Freight was earned to New-Orleans, but the ship remained at that port, after her arrival, until August, 1819, without obtaining freight for any other port, when the master, in pursuance of what he deemed his duty, discharged the seamen and left the ship himself. In October following, the present claimant purchased the ship, and sent her the next March on a voyage to Liverpool, and thence to New-York, at which latter place she arrived in July, 1820, and was soon after libelled by the respondents. The respondents were dissuaded from libelling the ship at New-Orleans, by the master, who informed them, that if they would come on with him to New-York, he would see them paid. The district court allowed full wages until the return of the seamen to New-York. [Case unreported.]

W. Slosson and J. Bulkley, for appellant, contended that, as the vessel did not earn freight after her arrival in New-Orleans, the seamen were not entitled to full wages; freight being the mother of wages. 3 Johns. 154, 518; 9 Johns. 350; 11 Johns. 279; Abb. Shipp. 430, 434, 483. And that, not having libelled the vessel in New-Orleans, where they might have done it, but having elected to return to New-York and look to the owners or master, they had either waived their remedy against the ship, or been guilty of such laches, that they could not proceed against her, in the hands of a bona fide purchaser. Code de Comm. arts. 191, 196; Abb. Shipp. 465, 470, note; 1 East, 4; 7 East, 5; Doug. 101; 2 Emer. Ins. 230; 1 Valin, Comm. 362; [Blaine v. The Charles Carter] 4 Cranch [8 U. S.] 328; 4 C. Rob. Adm. 245.

H. Wheaton and E. Paine, for respondents, replied that, where men are discharged by the master, without their own fault or consent, the maxim that "freight is the mother of wages," cannot apply. Johnson v. Sims, Case No. 7,413; 3 Johns. 517; 1 Holt, Shipp. 449; 2 Ld. Raym. 1044; 3 Bos. & P. 405; Roccus, De Nav. No. 43; Pothier, Des Matelots, 179, 198; 2 Rob. Adm. 251; 3 Rob. Adm. 92; 5 Rob. Adm. 224; Abb. Shipp. 491, note; The Saratoga, Case No. 12,355. That mariners are not barred of their remedy against the ship, though in the hands of a bona fide purchaser, by any lapse of time; the statute of limitations of the state not applying, and the United States having no statute on the subject: and that, at any rate, there was no evidence, in the present case, of that gross neglect which might occasion a forfeiture of their remedy. Madonna D'Idra, 1 Dod. 40; Brown v. Jones, Case No. 2,017; The Jerusalem, Id. 7,294; Relf v. The Maria, Id. 11,692; Code de Comm. art. 196; 1 Holt, Shipp. 443.

LIVINGSTON, Circuit Justice. This is an appeal from a sentence of the district court,

---

[1] [Reported by Elijah Paine, Jr., Esq.]